IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| STEVEN SCHOESSLER,<br><br>    Plaintiff,<br><br>v.<br><br>SHANE JONES, DANIEL IRVING, DAVE REHA, MARTY ARGANBRIGHT, individually and in their official capacities with the City of Stuart Police Department and Guthrie County Sheriff's Office, CITY OF STUART, and GUTHRIE COUNTY, IOWA,<br><br>    Defendants. | No. 4:23-cv-00148-RGE-SBJ<br><br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

Plaintiff Steven Schoessler sues Defendants Guthrie County Sheriff's Deputy Shane Jones, City of Stuart Police Officer Daniel Irving, City of Stuart Police Chief Dave Reha, Guthrie County Sheriff Marty Arganbright, the City of Stuart, Iowa, and Guthrie County, Iowa. Schoessler's suit arises from Deputy Jones's and Officer Irving's interior search of Schoessler's truck following an open-air sniff of the truck by Deputy Jones's police canine, "Urs." Schoessler alleges Deputy Jones and Officer Irving violated Schoessler's Fourth Amendment rights by searching his truck without probable cause. Schoessler alleges a *Monell* liability claim against Sheriff Arganbright and Guthrie County based on Urs's open-air sniff of his truck. Finally, Schoessler alleges state law negligent training and supervision, and respondeat superior claims against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County based on Deputy Jones's and Officer Irving's search.

Deputy Jones, Sheriff Arganbright, and Guthrie County move for summary judgment on each claim against them. Officer Irving, Chief Reha, and the City of Stuart also move for summary

judgment on each claim against them. Schoessler resists the motions only as to the Fourth Amendment claims against Deputy Jones and Officer Irving. For the reasons set forth below, the Court grants both motions for summary judgment.

## II.   BACKGROUND

### A.   Factual Background

The following facts are either uncontested or, if contested, viewed in the light most favorable to Schoessler, the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

On May 14, 2022, the Guthrie County Sheriff's Office received multiple reports of a suspicious person walking around an apartment complex in Casey, Iowa, with a crossbow and beer. Defs. Jones, Arganbright, and Guthrie County's Statement Undisputed Facts Supp. Mot. Summ. J. ¶¶ 3, 4, 11, ECF No. 25-2; Pl.'s Resp. Defs. Jones, Arganbright, and Guthrie County's Statement Undisputed Facts ¶¶ 3, 4, 11, ECF No. 30-2. Deputy Jones arrived on scene and spoke with the subject of the reports, Schoessler. ECF No. 25-2 ¶ 13; ECF No. 30-2 ¶ 13. Deputy Jones observed Schoessler's eyes were bloodshot and watery, his speech was slurred, and he smelled of alcohol. *Id.*[1] Deputy Jones instructed Schoessler to turn around and place his hands behind his back, stating, "You're not under arrest, you're being detained." Jones Body Camera Video 1 at 1:00–14, ECF No. 25-3 at GUTHRIE DEF 070. Schoessler refused. *Id.* at 1:12–15 ("No, no I'm not being detained."). Deputy Jones pulled out his taser, pointed it at Schoessler, and called for backup. *Id.* at 1:15–1:35. Schoessler then turned around and placed his hands behind his back, at

---

[1] Deputy Jones's interactions with Schoessler were captured on Deputy Jones's body camera. *See* Defs. Jones, Arganbright, and Guthrie County's Ex. K Supp. Mot. Summ. J. at GUTHRIE DEF 070, ECF No. 25-3 ("Jones Body Camera Video 1"); Defs. Jones, Arganbright, and Guthrie County's Ex. L Supp. Mot. Summ. J. at GUTHRIE DEF 071, ECF No. 25-3 ("Jones Body Camera Video 2"); Pl.'s App. Supp. Resist. Defs. Jones, Arganbright, and Guthrie County's Mot. Summ. J. at 32, ECF No. 30-4 ("Jones Body Camera Video 3").

which time Deputy Jones handcuffed him and led him towards his patrol vehicle. *Id.* at 1:30–2:20.

On the way to the patrol vehicle, Deputy Jones asked Schoessler if the white truck parked in one of the apartment complex's off-street parking spots was his. *Id.* at 3:19–25. Schoessler confirmed, "That's my truck, yes." *Id.* Schoessler then immediately recanted, stating, "No, it is not my truck." *Id.* at 3:24–37. Deputy Jones then asked Schoessler, "Do you have anything illegal that you're not supposed to have on you, poke, stab, anything like that?" *Id.* at 4:00–04. Schoessler responded, "No, I don't do drugs," to which Deputy Jones replied, "I didn't say you were doing drugs." *Id.* at 4:04–08. Deputy Jones also asked Schoessler if he had a phone, to which Schoessler responded, "No, I don't have a phone." *Id.* at 5:27–32. Deputy Jones then placed Schoessler in the back of his patrol vehicle. *Id.* at 9:50–58; *see generally id.* at 5:32–9:58.

Officer Irving arrived on scene. *Id.* at 8:45–10:15. Deputy Jones informed Officer Irving that he had held Schoessler at taser-point and Schoessler was intoxicated. *Id.* at 10:10–22. Deputy Jones also informed Officer Irving that Schoessler had driven to the apartment complex in the white truck and was reported to have been holding a crossbow and beer. *Id.* at 14:30–40. Deputy Jones then went to speak with the residents of the apartment complex, one of whom had video surveillance footage of the area. *See generally id.* at 14:50–20:00. Deputy Jones reviewed the footage, which showed Schoessler arriving at the complex in the white truck, exiting the truck and attempting to enter one of the apartments, returning to the truck and driving away, then returning to the complex shortly thereafter. Jones Body Camera Video 3 at 2:00–20, 2:25–3:45, 6:01–30, 8:40–46, ECF No. 30-4; *see generally id.* at 1:25–9:02.

During this time, dispatch informed Deputy Jones that Schoessler's driver's license was barred. ECF No. 25-2 ¶ 23; ECF No. 30-2 ¶ 23. Deputy Jones requested a tow truck to tow Schoessler's truck. Jones Body Camera Video 2 at 0:01–04, ECF No. 25-3 at GUTHRIE DEF 071. Deputy Jones then informed Schoessler he was being placed under arrest for driving while barred

and that his truck was being towed. *Id.* at 1:25–2:32. Schoessler stated the truck did not need to be towed and that he needed to contact his boss to come get it. *Id.* at 2:30–34. Deputy Jones asked if Schoessler had a phone in the truck, to which Schoessler responded, "I'll grab it." *See id.* at 2:34–38. Deputy Jones replied, "You're not moving, do you want me to grab it?" *Id.* at 2:37–40. Schoessler did not answer this question, instead asking if he could use Deputy Jones's phone; Deputy Jones declined. *Id.* at 2:40–46. Deputy Jones then retrieved his police canine, Urs, from his patrol vehicle and Urs performed an open-air sniff of the exterior of Schoessler's truck. *Id.* at 2:58–4:45. Following the sniff, Deputy Jones advised Officer Irving that Urs had provided a positive alert for the presence of narcotics in the truck. Defs. Irving, Reha, and the City of Stuart's Statement Undisputed Facts Supp. Mot. Summ. J. ¶ 14, ECF No. 22-1; Pl.'s Resp. Defs. Irving, Reha, and the City of Stuart's Statement Undisputed Facts ¶ 14, ECF No. 27-3; *see also* Defs. Irving, Reha, and the City of Stuart's App. Supp. Mot. Summ. J. at STUART 005, ECF No. 22-2.

Deputy Jones and Officer Irving searched the interior of Schoessler's truck and located marijuana, methamphetamine, and drug paraphernalia. ECF No. 22-1 ¶ 16; ECF No. 27-3 ¶ 16. Schoessler was transported to the Guthrie County Jail and charged with two counts of Failure to Affix Drug Stamps, one count of Driving While Barred, and two counts of Possession of a Controlled Substances. ECF No. 22-1 ¶ 19; ECF No. 27-3 ¶ 19. Schoessler moved to suppress the evidence seized from the search of his truck. ECF No. 22-2 at STUART 037–43. The District Court of Iowa for Guthrie County granted the motion and suppressed all evidence seized during the search of the truck, finding Deputy Jones lacked probable cause to conduct the search. *See id.* Schoessler ultimately pled guilty to Driving While Barred – Habitual Offender and was sentenced to time served. *Id.* at STUART 044–46.

**B.    Procedural Background**

Schoessler filed the present suit in the Iowa District Court for Guthrie County against

Deputy Jones, Officer Irving, Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County. Ex. 1 Supp. Notice Removal, ECF No. 1. Schoessler alleged a Fourth Amendment unlawful search claim against Deputy Jones and Officer Irving (Count I), an unlawful search claim under article I, section 8 of the Iowa Constitution against Deputy Jones and Officer Irving (Count II), a *Monell* liability claim against Sheriff Arganbright and Guthrie County (Count III), an unreasonable search claim under article I, section 8 of the Iowa Constitution against Sheriff Arganbright and Guthrie County (Count IV), a negligent supervision and training claim against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County (Count V), and a respondeat superior claim against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County (Count VI). *Id.* ¶¶ 54–113. Defendants removed the action to federal court. Notice Removal, ECF No. 1. Deputy Jones, Sheriff Arganbright, and Guthrie County as well as Officer Irving, Chief Reha, and the City of Stuart filed motions to dismiss the state constitutional claims in Counts II and IV. Defs. Jones, Arganbright, and Guthrie County's Mot. Dismiss Counts II and IV, ECF No. 2; Defs. Irving, Reha, and City of Stuart's Mot. Dismiss Counts II and IV, ECF No. 3. The Court granted both motions and dismissed Counts II and IV, finding the Iowa Supreme Court no longer recognizes a standalone cause of action for violations of the Iowa Constitution. Order Granting Defs.' Mot. Dismiss Counts II and IV, ECF No. 14.

Deputy Jones, Sheriff Arganbright, and Guthrie County now move for summary judgment on each of the remaining claims against them, including Counts I, III, V, and VI. Defs. Jones, Arganbright, and Guthrie County's Mot. Summ. J., ECF No. 25. Schoessler resists in part. Pl.'s Resist. Defs. Jones, Arganbright, and Guthrie County's Mot. Summ. J., ECF No. 30 (failing to respond to Defendants' motion as to Counts III, V, or VI); Pl.'s Br. Supp. Resist. Defs. Jones, Arganbright, and Guthrie County's Mot. Summ. J., ECF No. 30-1 (same). Officer Irving, Chief Reha, and the City of Stuart also move for summary judgment on each of the remaining claims

against them, including Counts I, V, and VI. Defs. Irving, Reha, and City of Stuart's Mot. Summ. J., ECF No. 22. Schoessler resists in part. Pl.'s Resist. Defs. Irving, Reha, and City of Stuart's Mot. Summ. J., ECF No. 27 (failing to respond to Defendants' motion as to Counts V or VI); Pl.'s Br. Supp. Resist. Defs. Irving, Reha, and the City of Stuart's Mot. Summ. J., ECF No. 27-1 (same). Deputy Jones, Sheriff Arganbright, and Guthrie County request a hearing. ECF No. 25 at 1. The Court decides the motions without oral argument, finding the parties' briefing and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). Having considered the parties' briefing and exhibits, the Court grants Defendants' motions for summary judgment as set forth below.

Additional facts are set forth below as necessary.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 577, 586 (2009)).

When analyzing whether a party is entitled to summary judgment, the nonmoving party "receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation

to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [their] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). If video evidence clearly contradicts a parties' version of the facts, a court must view the facts in the light depicted by the video evidence. *See Brown v. City of St. Louis*, 40 F.4th 895, 899 (8th Cir. 2022) ("[I]nstead of blindly accepting the nonmoving party's version of the facts, we may rely on video evidence found in the record where that video evidence blatantly contradict[s] the nonmoving party's characterization of the facts." (internal quotation marks and citation omitted)).

## IV.   DISCUSSION

Defendants move for summary judgment on each claim against them. *See* ECF No. 22; ECF No. 25. Deputy Jones and Officer Irving move for summary judgment on Schoessler's Fourth Amendment claim in Count I. *See* Defs. Irving, Reha, and City of Stuart's Br. Supp. Mot. Summ. J. 5–8, ECF No. 22-3; Defs. Jones, Arganbright, and Guthrie County's Br. Supp. Mot. Summ. J. 7–16, ECF No. 25-1. Deputy Jones argues he is entitled to qualified immunity because he had arguable probable cause to search Schoessler's truck. ECF No. 25-1 at 7–16. Officer Irving argues he did not violate Schoessler's Fourth Amendment rights as he had probable cause to search Schoessler's truck and is otherwise entitled to qualified immunity. ECF No. 22-3 at 5–8. Sheriff Arganbright and Guthrie County move for summary Judgment on Schoessler's *Monell* liability claim in Count III, arguing there is no underlying constitutional violation by Deputy Jones or evidence of a policy or custom that caused any such violation. ECF No. 25-1 at 16–18. Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County move for summary judgment on Schoessler's negligent supervision and training claim in Count V and respondeat superior claim

in Count VI, arguing there is no underlying actionable conduct by Deputy Jones or Officer Irving that would support either claim. ECF No. 22-3 at 8–11; ECF No. 25-1 at 18–20.

Schoessler resists in part, arguing neither Deputy Jones nor Officer Irving are entitled to summary judgment on Count I because the officers violated Schoessler's Fourth Amendment rights by seizing the truck and conducting the open-air sniff, the open-air sniff did not provide the officers probable cause or arguable probable cause to search his truck, and the doctrine of qualified immunity should not continue. *See* ECF No. 27-1 at 2–13; ECF No. 30-1 at 2–16.

The Court first addresses the Fourth Amendment claim against Deputy Jones and Officer Irving, finding both officers are entitled to summary judgment because Deputy Jones had arguable probable cause to search Schoessler's truck and is therefore entitled to qualified immunity, while Officer Irving had probable cause to search the truck or, at the very least, arguable probable cause and therefore did not violate Schoessler's Fourth Amendment rights and is otherwise entitled to qualified immunity. The Court then addresses the remaining claims against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County, finding summary judgment appropriate as to each claim because Schoessler has failed to resist Defendants' well-supported motions.

### A.    Count I: Unreasonable Search Against Deputy Jones and Officer Irving

Count I alleges Deputy Jones and Officer Irving violated Schoessler's Fourth Amendment rights by unlawfully searching his truck. Ex. 1 Supp. Notice Removal ¶¶ 54–64, ECF No. 1. Deputy Jones argues he is entitled to qualified immunity on Count I because the open-air sniff provided at least arguable probable cause to search the truck. ECF No. 25-1 at 7–16. Officer Irving argues he had probable cause to search the truck and is otherwise entitled to qualified immunity based on Deputy Jones's statement that the dog had alerted and Deputy Jones's imputed knowledge. ECF No. 22-3 at 5–8. Schoessler's arguments advanced in resistance to both officers' motions are similar. *See generally* ECF No. 27-1 at 2–13; ECF No. 30-1 at 2–16. Schoessler argues

the open-air sniff cannot be used to justify the search of his truck because Deputy Jones and Officer Irving violated his Fourth Amendment rights by seizing the truck and performing the sniff. ECF No. 27-1 at 2–5, 6–9; ECF No. 30-1 at 2–5, 9–12. Schoessler further contends the open-air sniff did not provide the officers probable cause or arguable probable cause to search his truck. ECF No. 27-1 at 5, 9–10; ECF No. 30-1 at 5–9, 12–13. Finally, he argues that even if the officers are otherwise entitled to qualified immunity, the doctrine of qualified immunity should not continue. ECF No. 27-1 at 10–13; ECF No. 30-1 at 13–18.

The Court first sets forth the applicable law on the Fourth Amendment and qualified immunity. The Court then addresses each of Schoessler's arguments in turn. For the reasons set forth below, the Court finds Deputy Jones and Officer Irving are entitled to summary judgment on Count I. Deputy Jones had at least arguable probable cause to search Schoessler's truck based on the trained drug detection dog's reactions during the open-air sniff and surrounding circumstances, and Officer Irving had probable cause to search Schoessler's truck or, at the very least, arguable probable cause based on Deputy Jones's statement the dog had alerted, the knowledge imputed from Deputy Jones, and the surrounding circumstances.

### 1.    The Fourth Amendment and qualified immunity

The Fourth Amendment of the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004). "One such exception is the so-called 'automobile exception,' which authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *Id.* (citation omitted). "[P]robable cause exists, when, given the totality of the circumstances, a reasonable person could believe there is a

fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Vittetoe*, 86 F.4th 1200, 1203 (8th Cir. 2023) (citation omitted). "The probable cause inquiry is an objective test," *id.* (citation omitted), and is "drawn from the facts known to the [] officer at the time," *Just v. City of St. Louis*, 7 F.4th 761, 767 (8th Cir. 2021) (internal quotation marks and citation omitted), including facts known from the officer's "training and experience," *see New v. Denver*, 787 F.3d 895, 901 (8th Cir. 2015). Whether probable cause exists is a question of law. *Joseph v. Allen*, 712 F.3d 1222, 1226–27 (8th Cir. 2013) (citation omitted).

Even if an officer lacks probable cause, "[q]ualified immunity shields government officials from liability unless their conduct 'violated a clearly established constitutional or statutory right of which a reasonable official would have known.'" *Schaffer v. Beringer*, 842 F.3d 585, 591 (quoting *Carpenter v. Gage*, 686 F.3d 644, 648 (8th Cir. 2012)). "[T]he qualified immunity analysis is divided into two prongs: (1) whether the facts alleged establish a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable officer would have known that his actions were unlawful." *Id.* (citation omitted). An officer is entitled to qualified immunity under the clearly-established prong if "arguable probable cause exists" to conduct a search. *Brown*, 40 F.4th at 900–01 (internal quotation marks and citation omitted).

Arguable probable cause exists if an officer "act[s] on a mistaken belief that probable cause exists," provided "that mistake is 'objectively reasonable.'" *Id.* (quoting *Just*, 7 F.4th at 767; citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "The probable cause standard inherently allows room for reasonable mistakes by a reasonable person, but the qualified immunity standard affords law enforcement officials an even wider berth for mistaken judgments 'by protecting all but the plainly incompetent or those who knowingly violate the law.'" *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Like

the probable cause analysis, the arguable probable cause analysis is objective and looks at "the information the searching officers possessed" at the time. *Creighton*, 483 U.S. at 641 (1987). The arguable probable cause analysis is a question of law when based on the objective, undisputed evidence. *Cf. Just*, 7 F.4th at 768 (finding arguable probable cause as a matter of law); *Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 835 (8th Cir. 2021) (finding that on a motion for summary judgment, when factual disputes are resolved in the non-moving party's favor, qualified immunity is a "pure question of law" (citation omitted)).

### 2.    Alleged seizure and open-air sniff of Schoessler's truck

Schoessler argues the drug detection dog's open-air sniff cannot be used to justify the search of his truck because Deputy Jones and Officer Irving violated his Fourth Amendment rights by seizing his truck and conducting the sniff. ECF No. 27-1 at 2–5, 6–9; ECF No. 30-1 at 2–5, 9–12. Schoessler asserts his truck was seized when Deputy Jones called for a tow truck and that Deputy Jones's stated reasons for doing so—that it was parked in a handicap space on a private lot—were pretext to conduct the open-air sniff and search the truck. ECF No. 27-1 at 2–4; ECF 30-1 at 2–4. Deputy Jones responds that Schoessler is precluded from arguing the seizure of his truck or open-air sniff were unconstitutional because he failed to plead those allegations. Defs. Jones, Arganbright, and Guthrie County's Reply Br. Supp. Mot. Summ. J. 1–2, ECF No. 31. Further, Deputy Jones argues the open-air sniff did not implicate Schoessler's Fourth Amendment rights. *Id.* at 2. Officer Irving argues he had no role in the decision to tow Schoessler's truck or conduct the open-air sniff. Defs. Irving, Reha, and the City of Stuart's Reply Br. Supp. Mot. Summ. J. 2, ECF No. 28.

"The pleading requirements under the Federal Rules of Civil Procedure, while relatively permissive, do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." *Wendt v. Iowa*, 971 F.3d 816, 821 (8th Cir. 2020)

(internal quotation marks and citations omitted). Nor do they allow a party to assert new grounds upon which a claim rests when the pleadings are "specific as to the nature, bases, and grounds of [the] alleged breaches." *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 992–93 (8th Cir. 2018) (citations omitted). Count I specifies Deputy Jones and Officer Irving violated Schoessler's Fourth Amendment rights "by conducting an interior search of [his] vehicle without consent, a warrant, or other legal justification." Ex. 1 Supp. Notice Removal ¶ 59, ECF No. 1. Schoessler is therefore precluded from asserting for the first time in his resistance that Deputy Jones or Officer Irving violated his Fourth Amendment rights by seizing his truck and subjecting it to an open-air sniff. *Cf. Wendt*, 971 F.3d at 821; *WireCo*, 897 F.3d at 992–93.

Moreover, Schoessler's truck was not seized when Deputy Jones called for a tow truck. *See* ECF No. 22-1 ¶¶ 16–18 (noting Schoessler's truck was not towed until after the truck was searched and Schoessler was transported to the Guthrie County Jail); ECF No. 27-3 ¶¶ 16–18; *cf. United States v. Brown*, 535 F.2d 424, 426–28 (8th Cir. 1976) (finding the defendant's car, which sat in a gas station parking lot for several hours following the defendant's arrest until officers called for a tow truck, was seized when the car was towed as opposed to when officers called for the tow). Even if Schoessler's truck had been seized at the time Deputy Jones called for a tow truck, any such seizure would have been permissible as Schoessler was arrested for driving while barred and did not reside at the apartment complex where his truck was parked. *See United States v. Martin*, 982 F.2d 1236, 1240 (8th Cir. 1993) (citations omitted) ("Police may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard."); Jones Body Camera Video 1 at 0:50–59, ECF No. 25-3 at GUTHRIE DEF 070 (containing Schoessler's statement that he did not reside at the complex); ECF No. 25-2 ¶ 23; ECF No. 30-2 ¶ 23; Jones Body Camera Video 2 at 1:28–32, ECF No. 25-3 at GUTHRIE DEF 071 (containing Deputy Jones's statement to Schoessler that he was under arrest for driving

while barred).

The open-air sniff of the exterior of Schoessler's truck also did not implicate Schoessler's Fourth Amendment rights. *See* Jones Body Camera Video 2 at 3:01–4:40, ECF No. 25-3 at GUTHRIE DEF 071 (demonstrating Urs did not enter the truck during the sniff). "[A] canine sniff of the exterior of a vehicle does not constitute a search subject to the Fourth Amendment's strictures." *Hill*, 386 F.3d at 858 (citations omitted); *accord Olivera-Mendez*, 484 F.3d at 511 (same). In some instances, a dog sniff can violate an individual's constitutional rights if it prolongs the initial seizure of the individual or their vehicle. *See, e.g., United States v. Fuehrer*, 844 F.3d 767, 773 (8th Cir. 2016) (stating "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission," including by executing a dog sniff). However, "officers d[o] not need any justification" for conducting an open-air sniff when the sniff "d[oes] not result in any seizure of [the individual] or his car beyond what he would have otherwise endured." *Hill*, 386 F.3d at 858; *see also Fuehrer*, 844 F.3d at 773 ("[A]s long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful.").

Here, Deputy Jones and Officer Irving did not need any justification for conducting the open-air sniff because Schoessler's truck was not seized when the sniff occurred and, regardless, the sniff did not prolong any purported seizure of Schoessler or his truck as the drug detection dog was already present on scene and the sniff occurred within minutes of Deputy Jones calling for the tow truck. *See* Jones Body Camera Video 2 at 0:01–3:02, ECF No. 25-3 at GUTHIRE DEF 071 (demonstrating the sniff occurred within minutes of Deputy Jones calling for a tow truck and informing Schoessler he was under arrest); *cf. Hill*, 386 F.3d at 858 (finding the seizure of the defendant and his vehicle were not prolonged when the drug dog had to be called to the scene to perform the sniff); *Fuehrer*, 844 F.3d at 773 (finding "no evidence that the dog sniff unlawfully

prolonged the [seizure]" when the drug dog arrived within minutes). Accordingly, there was no Fourth Amendment violation based upon the purported "seizure" of Schoessler's truck or the open-air sniff.

### 3.    Evidence obtained from the open-air sniff

Schoessler argues the open-air sniff did not provide Deputy Jones or Officer Irving probable cause or arguable probable cause to search his truck. ECF No. 27-1 at 5, 9–10; ECF No. 30-1 at 5–9, 12–13. "[A]n alert or indication by a properly trained and reliable drug dog provides probable cause . . . for the search of a vehicle." *United States v. Rederick*, 65 F.4th 961, 967 (8th Cir. 2023) (internal quotation marks and citations omitted). "An 'alert' occurs when a dog detects the odor of the drugs he is trained to locate" and can include the dog making "abrupt stops to detail a particular area," engaging in " intense closed-mouth sniffing," *United States v. Holleman*, 743 F.3d 1152, 1156 n.3 (8th Cir. 2014), or exhibiting other changes in behavior, *see United States v. Simeon*, 115 F. Supp. 3d 981, 1016 (N.D. Iowa 2015) (relying on expert testimony that "an alert is a natural, untrained response to the odor of drugs, such as a change in behavior, breathing, intensity or body language"). "An 'indication'" occurs when a dog identifies the location of the strongest source of the drug odor" and may include the dog sitting or lying down. *Holleman*, 743 F.3d at 1156 n.3. *Id.* "Assuming that the dog is reliable, a dog sniff resulting in an alert on a . . . car, . . . standing alone, gives an officer probable cause to believe that there are drugs present." *United States v. Tuton*, 893 F.3d 562, 570 (8th Cir. 2018) (internal quotation marks and citation omitted). "[T]he inquiry is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* (internal quotation marks and citations omitted).

Schoessler argues Deputy Jones lacked probable cause or arguable probable cause to search his truck based on the open-air sniff because Urs's "behaviors that Deputy Jones contends are

alerts are either not recorded or not objectively identifiable." ECF No. 30-1 at 7.[2] He further argues

any alerts Urs did provide were unreliable because there were several distractions in the area and

Urs did not provide a final indication, despite his deployment records demonstrating he provided

a final indication in over ninety percent of the cases in which he alerted. ECF No. 30-1 at 8–9.

Schoessler argues Officer Irving also lacked probable cause to search his truck based on the

open-air sniff and is not entitled to qualified immunity because Officer Irving watched the sniff

occur and saw Deputy Jones terminate the sniff without a final indication. ECF No. 27-1 at 5,

9–10. The Court addresses Schoessler's arguments as to each officer in turn.

a.    Deputy Jones

Contrary to Schoessler's assertion, Deputy Jones's body camera footage contains

objectively identifiable conduct by Urs that an officer could reasonably interpret as an alert.

The footage shows that towards the end of the open-air sniff, Urs began open-mouth panting

while walking past the front passenger door of Schoessler's truck. Jones Body Camera Video 2 at

4:20–26, ECF No. 25-3 at GUTHRIE DEF 071. Urs cannot be seen or heard panting at any other

point during the sniff. *See id.* at 3:01–4:40. Shortly thereafter, Urs returned to the front passenger

door and jumped up to the door, placing his front paws on the door and window. *Id.* at 4:26–33.

Urs had jumped onto the truck at earlier points during the sniff, but those instances were

precipitated by Deputy Jones placing his hand to the vehicle and Urs going directly to Deputy

Jones's hand. *See, e.g., id.* at 3:40–3:48. In contrast, at the time Urs jumped on the front passenger

door and placed his front paws on the door and window, Deputy Jones was attempting to direct

---

[2] Schoessler argues that absent an objectively identifiable alert, "the question of [whether an alert occurred] becomes one of handler credibility." ECF No. 30-1 at 7; *see also id.* at 7–8 (asserting the state court questioned Deputy Jones's credibility in its order on the motion to suppress and Deputy Jones's credibility is a matter for the jury). As set forth below, the Court finds there is objectively identifiable evidence of an alert. Further, Deputy Jones's subjective beliefs whether an alert occurred are irrelevant for purposes of qualified immunity. *Cf. Creighton*, 483 U.S. at 641.

Urs to a different part of the truck. *Id.* at 4:26–33 (showing Deputy Jones attempting to get Urs to sniff the handle of the rear passenger door).

Based on Urs's objectively identifiable changes in behavior, including his open-mouth panting near the front passenger door and unprovoked jump onto the same door, an officer could reasonably conclude Urs had alerted to the presence of narcotics in the truck. *See United States v. Carbajal*, 449 F. App'x 551, 553, 555 (8th Cir. 2012) (finding officers were permitted to rely on a drug dog's alert despite the defendant's argument that the "alleged drug alert was not observable to anyone other than trained dog handlers" when "[the dog's] action of jumping onto the side of [the defendant's] vehicle was readily observable" on the officer's body camera footage); *Simeon*, 115 F. Supp. 3d at 1002 (finding the dog had entered alert status when the dog's "breathing changed" and "he jumped and scratched on the driver's door"); *United States v. Crabtree*, No. 18-CR-04058-RK-1, 2020 WL 7050037, at * (W.D. Mo. Sept. 11, 2020) (finding the dog's "changes in breathing . . . and directed focus constitute reasonable examples that signaled the presence of illegal narcotics" and constituted alerts); *cf. Hoskins v. Withers*, 92 F.4th 1279, 1290 (10th Cir. 2024) (finding the officer had arguable probable cause to search the plaintiff's vehicle based on the video evidence showing the drug dog attempting to leap into the vehicle's window as the court "had characterized similar reactions from trained narcotics dogs as enough for probable cause" (collecting cases)).[3]

---

[3] Deputy Jones's body camera footage shows additional behavior that an officer could reasonably construe as an alert. When Urs was performing his initial sniff of the truck, he circled back to the rear passenger side of the truck's tailgate. *See* Jones Body Camera Video 2 at 3:23–35, ECF No. 25-3. When Deputy Jones later led Urs back around the truck's tailgate, Deputy Jones's body camera shows Deputy Jones abruptly stopping and turning back towards Urs, who was standing near the same spot by the truck's tailgate. *See id.* at 3:45–51. On the final sweep of the truck, Urs again returned to the same spot near the tailgate and Deputy Jones told him to "leave it." *See id.* at 4:10–4:20. An officer could reasonably conclude Urs's "abrupt stops to detail a particular area" were an additional alert. *Holleman*, 743 F.3d at 1156 n.3; *cf. Brown*, 40 F.4th at 900–01

An officer could reasonably conclude Urs's alerts were also sufficiently reliable. "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert" because "[t]he better measure of a dog's reliability [] comes away from the field, in controlled testing environments." *Harris*, 568 U.S. at 246. Thus, "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Rederick*, 65 F.4th at 967 (quoting *Harris*, 568 U.S. at 246–47). Urs was first certified as a narcotics detection dog by the Commission on Law Enforcement Standards and Training in December 2020. Defs. Jones, Arganbright, and Guthrie County's Ex. HH Supp. Mot. Summ. J. at GUTHRIE DEF 455, ECF No. 25-7; *see also* Defs. Jones, Arganbright, and Guthrie County's Ex. EE Supp. Mot. Summ. J. at GUTHIRE DEF 148, ECF No. 25-4 (certifying Urs satisfied the requirements of a forty-hour training program in December 2020). Three months prior to the open-air sniff at issue, the United States Police Canine Association, Inc. recertified Urs as a detection dog. Defs. Jones, Arganbright, and Guthrie County's Ex. DD Supp. Mot. Summ. J. at GUTHRIE DEF 147, ECF No. 25-4. Because Deputy Jones was Urs's handler for each of these certifications, ECF No. 25-7 at GUTHRIE DEF 455; ECF No. 25-4 at GUTHRIE DEF 148, an officer with Deputy Jones's training and experience would have known Urs was a certified drug detection dog. *Cf. Just*, 7 F.4th at 767; *Denver*, 787 F.3d at 901.

Even when conflicting evidence may call into question the reliability of a dog's alert, "[t]he sufficiency of a drug dog's alert must be construed with the same 'flexible, common-sense standard' as probable cause." *Rederick*, 65 F.4th at 968 (quoting *Harris*, 568 U.S. at 240; *citing United States v. Jackson*, 811 F.3d 1049, 1052 (2016)). An officer could have weighed Urs's

---

(emphasizing the probable cause analysis affords officers "substantial latitude" in drawing inferences from factual circumstances).

certifications against the "conflicting evidence," including the distractions in the area and Urs's failure to provide a final indication inconsistent with the majority of his deployments, and reasonably concluded Urs's alerts were sufficiently reliable. *Cf. Rederick*, 65 F.4th at 967; *Harris*, 568 U.S. at 246 ("The better measure of a dog's reliability [] comes away from the field, in controlled testing environments."); *United States v. Herbst*, No. 17-CR-4059, 2018 WL 445532, at *14–15 (N.D. Iowa Jan. 16, 2018) (finding the drug dog's training and certifications outweighed both the environmental factors present during the sniff and flaws in the dog's deployment records, and supported a finding of probable cause).

Further, "the issue is whether the totality of the circumstances present at the scene provided probable cause to search" the truck. *Rederick*, 65 F.4th at 967 (quoting *United States v. Winters*, 600 F.3d 963, 968 (8th Cir. 2010)). In addition to Urs's objectively identifiable alerts and recent certification, Schoessler exhibited signs of intoxication including bloodshot, watery eyes and slurred speech. ECF No. 25-2 ¶ 13; ECF No. 30-2 ¶ 13. When Deputy Jones asked Schoessler if he had anything illegal on him, including anything that would poke or stab Deputy Jones, Schoessler responded, "I don't do drugs." Jones Body Camera Video 1 at 4:04–08, ECF No. 25-3 at GUTHRIE DEF 070. Schoessler also provided inconsistent statements to Deputy Jones about whether he was the owner of the truck. *Id.* at 3:20–31. Finally, when Deputy Jones informed Schoessler his truck was being towed, Schoessler stated the truck did not need to be towed and he needed to contact his boss to pick it up. *See* Jones Body Camera Video 2 at 1:25–2:34, ECF No. 25-3 at GUTHRIE DEF 071. In response, Deputy Jones asked Schoessler if he had a phone in his truck, to which Schoessler responded, "I'll grab it"—despite earlier stating he did not have a phone. *Id.* at 2:34–38; Jones Body Camera Video 1 at 5:27–32, ECF No. 25-3 at GUTHRIE DEF 070. When Deputy Jones offered to grab the phone from Schoessler's truck, Schoessler asked if he could instead use Deputy Jones's phone. *See* Jones Body Camera Video 2 at 2:37–46, ECF

18

No. 25-3 at GUTHRIE DEF 071.

Based on the totality of the circumstances, including Urs's identifiable alerts and certifications as well as Schoessler's signs of intoxication, denial of drug use, inconsistent statements about whether the truck was his, resistance to having his truck towed, and hesitation in allowing Deputy Jones to enter his truck to retrieve a phone he previously denied having, Deputy Jones could have reasonably, even if mistakenly, believed probable cause existed to support the presence of narcotics in the truck. *Cf. Brown*, 40 F.4th at 900–01 ("[W]here the officer[] act[s] on a mistaken belief that probable cause exists, if that mistake is objectively reasonable, arguable probable cause exists." (internal quotation marks and citations omitted)); *Rederick*, 65 F.4th at 967 ("[T]he issue is whether the totality of the circumstances present at the scene provided probable cause to search." (internal quotation marks and citation omitted)); *United States v. McMillion*, No. 23-2720 (8th Cir. May 13, 2024) ("[O]fficers may draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them. [W]e view the officers' observations as a whole, rather than as discrete and disconnected occurrences." (alteration in original) (internal quotation marks and citations omitted)). Accordingly, Deputy Jones is entitled to qualified immunity on Count I.

b.     Officer Irving

Officer Irving had probable cause or, at the very least, arguable probable cause to search the interior of Schoessler's truck based on Deputy Jones's statement that Urs had alerted to the presence of narcotics. Schoessler acknowledges Deputy Jones informed Officer Irving that Urs had alerted to the truck. ECF No. 22-1 ¶ 14; ECF No. 27-3 ¶ 14. Nonetheless, Schoessler argues Officer Irving lacked probable cause to search the truck and is not otherwise entitled to qualified immunity because Officer Irving watched the open-air sniff occur "and was able to see when Deputy Jones pulled [Urs] off without a final indication." ECF No. 27-1 at 5; *see also id.* at 9.

19

Officer Irving denies that he observed the open-air sniff occur. ECF No. 28 at 2 (citing ECF No. 22-2 at STUART 002).

Deputy Jones's body camera footage shows Officer Irving standing off to the side of Schoessler's truck during the open-air sniff, closest to the front driver side. *Compare* Jones Body Camera Video 2 at 0:16, ECF No. 25-3 at GUTHRIE DEF 071 (showing Officer Irving standing on the driver's side of the truck prior to the sniff), *with id.* at 3:08 (showing Officer Irving standing on the driver's side of the truck when the sniff commenced), *id.* at 3:35 (showing Officer Irving standing on the driver's side during the sniff), *and id.* at 4:27–33 (showing Officer Irving standing on the driver's side immediately after Urs jumped up to the front passenger window). Thus, Officer Irving would have been able to observe the portion of the open-air sniff that occurred on the driver side of the truck, but would not have been able to observe the portion that occurred on the passenger side—the side in which Urs open-mouth panted and jumped on the front passenger door as well as the side from which Deputy Jones terminated the open-air sniff. *See id.* at 4:22–40.

Because the video evidence demonstrates Officer Irving did not observe the objectively identifiable behavior that constituted an alert or observe Deputy Jones terminate the sniff, it was reasonable for Officer Irving to rely on Deputy Jones's representation that Urs had alerted in concluding there was probable cause to search the truck. *See Tuton*, 893 F.3d at 570 ("[A] dog sniff resulting in an alert on a . . . car, . . . standing alone, gives an officer probable cause to believe that there are drugs present."); *see also Conrad v. Davis*, 120 F.3d 92 (8th Cir. 1997) (finding the officer's seizure of the plaintiff's money was reasonable under the Fourth Amendment when the officer had been informed by another officer that a drug dog had alerted to the money).

Even if Officer Irving had observed the entirety of the sniff, he would have observed the same objectively identifiable conduct as Deputy Jones that the Court has found an officer could reasonably interpret as an alert, including Urs's open-mouth panting and jump onto the passenger

door. *See supra* Section IV.A.3.a. Further, even if Officer Irving had some reason to question Urs's reliability, "the issue is whether the totality of the circumstances present at the scene provided probable cause to search" the truck. *Rederick*, 65 F.4th at 967 (internal quotation marks and citation omitted). Officer Irving knew prior to the search of Schoessler's truck that Schoessler had driven the truck to the apartment complex and exhibited signs of intoxication. *See* Jones Body Camera Video 1 at 10:10–23, 14:30–40, ECF No. 25-3 at GUTHRIE DEF 070. Deputy Jones and Officer Irving were also consistently communicating with each other prior to the search. *See id.* at 10:10–35, 14:05–45; Jones Body Camera Video 2 at 0:01–50, ECF No. 25-3 at GUHTRIE DEF 071. Deputy Jones's knowledge can therefore be imputed to Officer Irving under the collective knowledge doctrine. *See United States v. Banks*, 514 F.3d 769, 776 (8th Cir. 2008) (holding "[t]he collective knowledge doctrine imputes the knowledge of all officers involved in an investigation upon the [searching] officer" provided there is "some degree of communication between the officer who possesses the incriminating knowledge and the officer who does not" (citations omitted)). As discussed above, Deputy Jones was aware that Schoessler denied using drugs, had made inconsistent statements about whether the truck was his, was resistant to having his truck towed, and was hesitant to allow Deputy Jones to enter his truck to retrieve his phone. *See supra* Section IV.A.3.a.

Based on this additional imputed knowledge, along with Deputy Jones's statement that Urs alerted and Officer Irving's knowledge that Schoessler drove the truck to the complex and exhibited signs of intoxication, Officer Irving had probable cause to search Schoessler's truck for evidence of narcotics. *Cf. Rederick*, 65 F.4th at 967 ("[T]he issue is whether the totality of the circumstances present at the scene provided probable cause to search." (internal quotation marks and citation omitted)); *McMillion*, No. 23-2720 ("[O]fficers may draw on their experience and specialized training to make inferences from and deductions about the cumulative information

available to them. [W]e view the officers' observations as a whole, rather than as discrete and disconnected occurrences." (alteration in original) (internal quotation marks and citations omitted)). Even if such evidence was insufficient to establish probable cause, at the very least, such evidence is sufficient to establish arguable probable cause. *Cf. Ulrich*, 715 F.3d at 1059 ("The probable cause standard inherently allows room for reasonable mistakes by a reasonable person, but the qualified immunity standard affords law enforcement officials an even wider berth for mistaken judgments . . ."). Accordingly, Officer Irving did not violate Schoessler's Fourth Amendment rights by searching the truck and is otherwise entitled to qualified immunity on Count I.

### 4.    Applying qualified immunity

Apart from the merits of the qualified immunity analysis as it applies to Deputy Jones and Officer Irving, Schoessler argues the Court should decline to apply the qualified immunity doctrine at all. *See* ECF No. 30-1 at 13–16 (arguing the "[q]ualified immunity doctrine should not continue"); ECF No. 27-1 at 10–13 (same). The Supreme Court and Eighth Circuit continue to apply the doctrine of qualified immunity. *See Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7–8 (2021) (granting qualified immunity to the petitioner); *Peterson v. Heinen*, 89 F.4th 628, 633–34, 636–40 (8th Cir. 2023) (granting qualified immunity to some of the petitioners). This Court, bound by such precedent, must do the same. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982) ("[A] precedent of this Court must be followed by the lower federal courts . . ."); *Hood v. United States*, 342 F.3d 861, 865 (8th Cir. 2003) ("The District Court . . . is bound, as are we, to apply the precedent of this Circuit." (citation omitted)); *Graham v. Barnette*, 5 F.4th 872, 880 n.3 (8th Cir. 2021) ("Graham also argued . . . that the doctrine of qualified immunity should be modified or 'overruled.' This argument remains foreclosed by Supreme Court and Eighth Circuit precedent." (citing *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam); *Lane v. Nading*, 927 F.3d 1018, 1022 (8th Cir.

2019))). The Court therefore declines Schoessler's request to overrule the doctrine of qualified immunity.

Accordingly, the Court grants Deputy Jones's and Officer Irving's motions for summary judgment as to Count I.

### B.      Counts III, V, and VI

Schoessler's remaining claims include a *Monell* liability claim against Sheriff Arganbright and Guthrie County in Count III; a negligent supervision and training claim against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County in Count V; and a respondeat superior claim against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County in Count VI. Ex. 1 Supp. Notice Removal ¶¶ 74–88, 102–13, ECF No. 1. Sheriff Arganbright and Guthrie County move for summary judgment on Counts III, V, and VI. ECF No. 25-1 at 16–20. Chief Reha and the City of Stuart move for summary judgment on Counts V and VI. ECF No. 22-3 at 8–11. Schoessler fails to address the arguments set forth by Defendants in support of their motions. *See generally* ECF No. 27-1; ECF No. 30-1.

The Court first addresses Schoessler's failure to resist Defendants' motions, finding summary judgment appropriate on Counts III, V, and VI for this reason alone. The Court then addresses Sheriff Arganbright and Guthrie County's motion as to Count III, finding they are entitled to summary judgment for the reasons set forth in their briefing. Because summary judgment is warranted on Schoessler's federal law claims in Counts I and III, the Court addresses whether to exercise supplemental jurisdiction over Schoessler's remaining state law claims in Counts V and VI. Finding it appropriate to exercise supplemental jurisdiction over the claims, the Court addresses Defendants' arguments as to Counts V and VI and concludes Defendants are entitled to summary judgment on each claim for the reasons set forth in their briefing.

### 1.       Failure to resist

It is a resisting party's "responsibility to show that there [a]re genuine issues of material fact in the record that preclude[] [] summary judgment." *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Tr.*, 558 F.3d 731, 734–35 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 256); *see also Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials . . . , but must set forth specific facts showing that there is a genuine issue for trial." (omission in original)). Local Rule 56(b) states, "A party resisting a motion for summary judgment must . . . file . . . [a] brief that conforms with the requirements of Local Rule 7(e) in which the resisting party responds to each of the grounds asserted in the motion for summary judgment." "If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court." LR 56(c).

Schoessler has failed to present any evidence or argument in resistance to Sheriff Arganbright and Guthrie County's motion for summary judgment on Counts III, V, and VI or Chief Reha and the City of Stuart's motion for summary judgment on Counts V and VI. *See generally* ECF No. 27–1; ECF No. 30-1. Summary judgment is warranted as to each count on this basis alone. *Cf.* LR 56(b), (c); *Satcher*, 558 F.3d at 734–35; *Anderson*, 477 U.S. at 256; *Samide v. Titan Int'l, Inc.*, 208 F. Supp. 2d 1005, 1009 (S.D. Iowa 2002) (granting summary judgment on the plaintiff's ERISA claim because the plaintiff failed to file a resistance to that claim); *C. Line, Inc. v. City of Davenport*, 957 F. Supp. 2d 1012, 1032 (S.D. Iowa 2013) ("[S]ummary judgment in favor of Defendants is warranted based solely on [Plaintiff's] failure to resist Defendants' Motion for Summary Judgment on the takings and substantive due process claims."). As set forth below, summary judgment is also warranted on each claim for the reasons stated by Defendants in their briefing.

### 2.    Count III: *Monell* liability

Count III alleges a *Monell* liability claim against Sheriff Arganbright and Guthrie County for violating Schoessler's Fourth Amendment right to be free from warrantless searches. Ex. 1 Supp. Notice Removal ¶¶ 74–88, ECF No. 1. Specifically, Schoessler alleges Deputy Jones was acting under the authority of the Guthrie County Sheriff's Office and that Guthrie County had a policy, practice, or custom of "permitting law enforcement officers to direct drug dogs to sniff the interior of vehicles in the absence of a warrant or probable cause." *Id.* ¶¶ 77, 81. Sheriff Arganbright and Guthrie County argue they are entitled to summary judgment on Count III because Deputy Jones did not commit the underlying conduct Schoessler alleges in support of Count III and the record otherwise contains no evidence of an official policy or custom that caused Deputy Jones to violate Schoessler's constitutional rights. ECF No. 25-1 at 17–18.

"[I]n order for [*Monell*] liability to attach, individual liability first must be found on an underlying substantive claim." *Johnson v. City of Ferguson*, 926 F.3d 504, 506 (8th Cir. 2019) (internal quotation marks and citations omitted). The only underlying unconstitutional conduct Schoessler alleges in support of his *Monell* claim is officers "directing drug dogs to search the interior of vehicles in the absence of a warrant or probable cause." Ex. 1 Supp. Notice Removal ¶ 81, ECF No. 1; *see also id.* ¶¶ 74–88. Urs, however, did not search the interior of Schoessler's truck. *See* Jones Body Camera Video 2 at 3:01–4:40, ECF No. 25-3 at GUTHRIE DEF 071. Schoessler is bound by the allegations in his complaint. *Cf. Wendt*, 971 F.3d at 821; *WireCo*, 897 F.3d at 992–93. Absent an underlying constitutional violation, there can be no *Monell* liability against Sheriff Arganbright or Guthrie County. *Cf. Johnson*, 926 F.3d at 506. Even if Schoessler's claim was based on Deputy Jones's interior search of his truck, Schoessler has failed to set forth evidence of an official policy or custom by Guthrie County that caused Deputy Jones to unlawfully search the interior of his truck. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,

520 U.S. 397, 404 (1997) (requiring the plaintiff to show "a direct causal link between the [entity's] action and the deprivation of federal rights").

Accordingly, Sheriff Arganbright and Guthrie County are entitled to summary judgment on Count III.

### 3.    Supplemental Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court has found Defendants are entitled to summary judgment on each of Schoessler's federal law claims—the only claims over which the Court has original jurisdiction. *See supra* Sections IV.A, IV.B.2; 28 U.S.C. §§ 1331, 1332. Accordingly, the Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims in Counts V and VI. *See Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) ("'A district court [that] has dismissed all claims over which it has original jurisdiction' 'may decline to exercise supplemental jurisdiction.'" (alteration in original) (quoting 28 U.S.C. § 1367(c)(3)). In determining how to exercise its discretion, the Court considers "the stage at which the federal claims were disposed of, 'the difficulty of the state claim, the amount of judicial time and energy already invested in it, the amount of additional time and energy necessary for its resolution, and the availability of a state forum.'" *Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) (quoting *Koke v. Stifel, Nicolaus & Co.*, 620 F.2d 1340, 1346 (8th Cir. 1980)). Because Schoessler's federal law claims have been dismissed at the summary judgment stage, the Court and parties have invested significant time and energy into the case, and the amount of additional time and energy necessary for the resolution of the matters is minimal, the Court finds it appropriate to exercise supplemental jurisdiction over the remaining state law claims in Counts V and VI. *Cf. id.*

### 4.    Count V: Negligent training and supervision

Count V alleges a negligent supervision and training claim against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County. Ex. 1 Supp. Notice Removal ¶¶ 102–08, ECF No. 1. Schoessler alleges Defendants "should have known of Deputy Jones['s] and Officer Irving's dangerous proclivities and the threat of injury they posed" and "breached their duty in the negligent and reckless training and supervision of Deputy Jones and Officer Irving." *Id.* ¶¶ 107–08. Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County argue they cannot be held liable absent actionable conduct against Deputy Jones or Officer Irving and that the record otherwise contains no evidence they breached a specific standard of care in training or supervising the officers. ECF No. 22-3 at 8–10; ECF No. 25-1 at 18–20.

"[A]n employer cannot be held liable for negligent supervision or training where the conduct that proper supervision and training would have avoided is not actionable against the employee." *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999). The Court has found the underlying claims against Deputy Jones and Officer Irving are not actionable against them. *See supra* Sections IV.A. Further, "to recover against the employer under a negligent-training theory, evidence of a specific standard of care for training and its breach is required"; "[i]t is not enough to show the mistakes or negligent conduct of the employee." *Alcala v. Marriot Int'l, Inc.*, 880 N.W.2d 699, 709 (Iowa 2016) (citation omitted). "[T]o prove negligent supervision, a plaintiff must show . . . the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time the employee engaged in wrongful or tortious conduct." *Est. of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 680 (Iowa 2004) (citations omitted). Here, the record contains no evidence that Defendants breached a specific standard of care in training Deputy Jones or Officer Irving. *Cf. Alcala*, 880 N.W.2d at 709. The record also contains no evidence Deputy Jones or Officer Irving were unfit for duty at the time

of the search of Schoessler's truck or that Defendants should have known of any such unfitness for duty. *Cf. Est. of Harris*, 679 N.W.2d at 680.

Accordingly, Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County are entitled to summary judgment on Count V.

### 5.    Count VI: Respondeat superior

Count VI alleges a respondeat superior claim against Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County. Ex. 1 Supp. Notice Removal ¶¶ 109–13, ECF No. 1 (alleging Defendants "are liable for the conduct and/or omissions of Deputy Jones and Officer Irving, including violations of the Iowa Constitution"). Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County move for summary judgment, arguing there was no underlying tortious conduct by Deputy Jones or Officer Irving, the claims based on violations of the Iowa Constitution have been dismissed, and respondeat superior does not apply to Schoessler's § 1983 claims for violations of the United States Constitution. ECF No. 22-3 at 10–11; ECF No. 25-1 at 20.

"[A] plaintiff must establish the agent's negligence to recover against the principal under respondeat superior." *Hook v. Trevino*, 839 N.W.2d 434, 441 (Iowa 2013). Schoessler has not alleged a common law negligence claim against either Deputy Jones or Officer Irving, nor has he set forth argument or evidence demonstrating the officers' conduct was negligent. *See generally* Ex. 1 Supp. Notice Removal, ECF No. 1; ECF No. 27-1; ECF No. 30-1. The Court has also dismissed Schoessler's claims under the Iowa Constitution against Deputy Jones and Officer Irving. *See* ECF No. 14. Thus, the only remaining wrongful conduct alleged by Schoessler against Deputy Jones and Officer Irving is their purported violations of his Fourth Amendment rights. The Court, however, has found Officer Irving did not violate Schoessler's Fourth Amendment rights because he had probable cause to search Schoessler's truck and both Officer Irving and

Deputy Jones are entitled to qualified immunity because they had at least arguable probable cause to search Schoessler's truck. *See supra* Section IV.A. Regardless, a plaintiff cannot proceed under a respondeat superior theory based solely on violations of the United States Constitution. *Cf. Monell v. Dep't of Soc. Srvs. of City of New York*, 436 U.S. 658, 694 (1978) (holding "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" in part because "creation of a federal law of respondeat superior would have raised all the constitutional problems associated with the obligation to keep the peace, an obligation Congress chose not to impose").

Accordingly, Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County are entitled to summary judgment on Count VI.

## V.     CONCLUSION

Deputy Jones and Officer Irving are entitled to summary judgment on Schoessler's Fourth Amendment unlawful search claim. Deputy Jones is entitled to qualified immunity as he had arguable probable cause to search Schoessler's truck based on Urs's objectively identifiable alert and certifications as well as the surrounding circumstances. Officer Irving did not violate Schoessler's Fourth Amendment rights and is otherwise entitled to qualified immunity because he had probable cause or, at the very least, arguable probable cause to search Schoessler's truck based on Deputy Jones's statement Urs had alerted, the knowledge imputed from Deputy Jones, and the surrounding circumstances.

Sheriff Arganbright and Guthrie County are entitled to summary judgment on Schoessler's *Monell* liability claim because Schoessler has failed to resist their motion, failed to demonstrate an underlying constitutional violation by Deputy Jones, and failed to submit evidence showing a policy or custom by Sheriff Arganbright or Guthrie County that caused any underlying constitutional violation. Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County

are entitled to summary judgment on Schoessler's negligent training and supervision claim because Schoessler has failed to resist their motions, failed to demonstrate any underlying actionable conduct against Deputy Jones or Officer Irving, and failed to show Defendants did not properly train the officers or knew the officers were unfit for duty. Chief Reha, Sheriff Arganbright, the City of Stuart, and Guthrie County are also entitled to summary judgment on Schoessler's respondeat superior claim because Schoessler has failed to resist their motions or demonstrate any underlying conduct by the officers that could support a respondeat superior claim.

Accordingly, **IT IS ORDERED** that Defendants Daniel Irving, Dave Reha, and the City of Stuart's Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Shane Jones, Marty Arganbright, and Guthrie County, Iowa's Motion for Summary Judgment, ECF No. 25, is **GRANTED**.

**IT IS SO ORDERED.**

Dated on this 17th day of May, 2024.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE